UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERALD KELLEY, | ) | 1:04cv6083 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Gerald Kelley ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 9, 2005, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his application on September 6, 2001, alleging disability since December 31, 1999, due to "hepatitis C, hiatal hernia, diverticulosis, bad right knee, injuries to both arms, bad back." AR 55-57, 71-80. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 40-43, 46-49, 50. On June 12, 2003, ALJ Michael J. Haubner held a hearing. AR 247-267. On August 22, 2003, ALJ Haubner found that Plaintiff was not disabled. AR 13-20. On June 22, 2004, the Appeals Council denied review. AR 5-8.

<u>Hearing Testimony</u>

ALJ Haubner held a hearing on June 12, 2003, in Fresno, California. Plaintiff appeared along with his attorney, Gina Fazio. AR 248.

Plaintiff testified that he was 51 years old at the time of the hearing and graduated high school while in prison. AR 253-254, 260. He last worked in 1999 painting wine tanks. AR 254. He also worked as a clerk while in prison from 1986-1986 and 1989-1992. AR 255.

Plaintiff rents a room. He shops every two weeks, takes care of his personal needs and does laundry. AR 255-256. He does not go to church, but visits friends and family twice a year. AR 256-257. He has a driver's license and drives a stick-shift pick-up truck. AR 257. He drives once a week. AR 257.

He explained that he was fully compliant with his treatment and medications. AR 258. He indicated that he thinks about suicide everyday but has no plans to commit suicide. AR 258. His medications cause drowsiness and difficulty focusing. AR 258. He stated that he was fatigued all the time. AR 258. Plaintiff has told his health care providers about the side effects but they have not changed his medications. AR 258. He further explained that he did not know if the fatigue was caused by the medications or his problems. AR 258-259.

Plaintiff explained that he has irritable bowel syndrome ("IBS") that causes bloating, gas cramps, constipation, diarrhea, sharp abdominal pain, dizziness, fatigue, weakness, depression,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

back ache and nausea.  AR 259-260.  He gets dizzy when he stands up and when he wakes up at night.  AR 264.  He sometimes gets dizzy when he feels sick to his stomach or when he gets overheated in the sun.  AR 264.  His appetite varies depending on how his stomach feels and his weight has fluctuated.  AR 264.  He has had this problem since high school but it has continued to get worse through the years.  AR 260.  He started seeing a doctor four years ago when he couldn't take it anymore.  AR 260.

During a typical day, Plaintiff gets up about 8-8:30 a.m. and is in the bathroom for at least an hour.  He has breakfast and goes back to the bathroom.  AR 260.  Then he watches television and maybe goes outside and plays with his dog.  He reads the newspaper and takes a nap.  AR 262.  He tries to do a little yard work when he feels well, about once a week.  AR 262, 263.  On average, he is in the bathroom about three to seven times per day for about three to four hours total.  AR 262.  He sleeps approximately 12 hours out of a 24 hour period, and indicated that this was not due to the medication as he slept "a lot" before he started the medications.  AR 264.

Plaintiff testified that the last time he did illicit drugs was at least eight years ago.  AR 261.  He last used intravenous drugs in 1970, but has used other drugs since then.  AR 261.  He last had alcohol in the 1980s.  AR 261.

He has problems with concentration because of the pain.  He also has memory problems but doesn't know why.  AR 263.

Plaintiff explained that when he gets "thrown out" of his routine, the resulting stress makes his problems worse.  AR 263.  His medication (Dicyclomine) helps his cramps but does not take them away.  AR 263.

When he bends down, his lower back and right knee hurt.  He is seeing a physical therapist for his back and needs to elevate his legs during the day.  He wasn't sure if it helped.  AR 264.

During the hearing, the ALJ indicated to Plaintiff's attorney that he would like clarification of a questionnaire submitted by Dr. Smith.  AR 259.  The ALJ held the record open so that the requested additional information could be submitted.  AR 266.

Medical Evidence

Plaintiff received medical treatment at Sierra Adult Health Care, University Medical Center. The first treatment note is dated September 13, 2000. Plaintiff indicated that Prevacid was helping his heartburn, but he had some gas and distress. AR 147.

On December 13, 2000, Plaintiff complained of chronic low back pain and indicated that his gastroesophageal reflux disease was well controlled on Prevacid. AR 145. G. Chang, M.D., noted that Plaintiff had a positive hepatitis C test. AR 146.

Plaintiff underwent lumbar spinal x-rays on December 14, 2000. The x-rays revealed mild degenerative disc disease at L4-5 with mild scoliosis. AR 144.

On February 12, 2001, Plaintiff complained of fatigue for many years and depression with suicidal ideation, for which he was given a psychiatric referral. AR 142.

A note dated May 14, 2001, indicated that Plaintiff had chronic hepatitis C but did not want treatment. AR 140.

On June 13, 2001, Plaintiff was diagnosed with diverticulitis and hemorrhoids. Plaintiff was instructed to increase his vegetable and fiber intake and take Metamucil. AR 137-138.

On June 15, 2001, mental health crisis screening was performed at a mental health center, but Plaintiff denied any imminent plan for suicide. AR 186-188.

Plaintiff again refused treatment for his hepatitis C on June 18, 2001. AR 134.

On July 2, 2001, Plaintiff saw Carol Grainger, a licensed marriage and family therapist. Dr. Chang referred Plaintiff for treatment because the Interferon could worsen his symptoms of depression. AR 179. Plaintiff reported that he had been in prison three times for drug-related charges. AR 176. He explained that he has been depressed since he got out of prison in 1996. AR 179. He said he used cocaine, heroin, LSD, crank and cannabis, but denied present use with the exception of cannabis, which he smoked about three times a month. AR 177. He was not taking the Elavil as prescribed by Dr. Chang because it made him too sleepy. He complained of disturbed sleep and weight loss. AR 178. His current GAF score was 50. AR 180. Ms. Grainger indicated that Plaintiff's current risk of suicide was low and recommended case management and medication. AR 179, 182.

Plaintiff was seen by psychiatrist Dr. Urbina on July 20, 2001. Plaintiff explained that he has not been feeling well since he got out of prison in 1996. He indicated that he has been sober for the past four years. Dr. Urbina diagnosed depressive disorder, not otherwise specified, rule out major depressive disorder, polysubstance dependency by history and antisocial personality. Dr. Urbina recommended antidepressant medication and psychotherapy. AR 170-172.

On August 21, 2001, Dr. Urbina diagnosed major depressive disorder, substance dependency and antisocial personality. There was no significant improvement. AR 165.

On September 18, 2001, Plaintiff told Dr. Urbina that he felt terrible and hurt both of his arms. Plaintiff also reported that Wellbutrin made him sick when he took it twice a day. Dr. Urbina indicated that Plaintiff was less depressed. AR 162.

On October 16, 2001, Plaintiff saw Dr. Urbina and complained that he was depressed because of his arms. Dr. Urbina noted, "he gives the impression of forcing himself to not feel better." He denied side effects but could not tell if he had improved. Dr. Urbina assessed, "Stable. Impression of secondary gain." AR 160.

Plaintiff received emergency care on September 10, 2001, for moderate arm pain caused by lifting and repetitive use. AR 130. He was told to apply ice packs and take ibuprofen and instructed to follow up with his primary doctor. AR 131.

On September 25, 2001, Plaintiff complained of pain and weakness in his arms. Dr. Chang diagnosed muscle strain and prescribed medication, referred Plaintiff to physical therapy and instructed Plaintiff to do range of motion exercises. AR 128.

Plaintiff saw Dr. Urbina on November 16, 2001, and reported that he was depressed because of his arm and was "using a cast." He denied side effects but did not know if Wellbutrin was working. Dr. Urbina indicated that Plaintiff was stable on the medication. AR 158.

On November 27, 2001, Plaintiff was evaluated by Rustom F. Damania, M.D. Plaintiff presented with "vague complaints" of pain in the left wrist, both biceps, right shoulder and right knee. He also complained of low back pain for 25 years that has worsened as he gets older. Dr. Damania noted a past history of hepatitis C, diverticulitis resulting in diarrhea approximately once a week, and hiatal hernia with epigastric pain that responds very well to Prevacid. Upon

5

examination, Plaintiff was in no acute distress or discomfort and was well-oriented to time, person and place. His abdomen was soft with no tenderness, guarding or rigidity. There was no distention and bowel sounds were normal. Shoulder, elbow, wrist, hip, knee and ankle joints were normal, with normal range of motion. His cervical, thoracic and lumbosacral spine were normal. Gait was normal. Based on his examination and review of records, Dr. Damania diagnosed Plaintiff with hepatitis C and spider angiomata, and ex-drug addiction (none for eight years). He noted that Plaintiff was advised to start Interferon therapy but has declined. Plaintiff had no physical limitations, but because of his hepatitis C and symptoms of fatigue, he could not frequently lift more than 50 pounds. He could lift less than 30 pounds frequently and had no postural or manipulative limitations. AR 115-119.

On December 10, 2001, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about six hours and could sit about 6 hours in an eight hour period. Plaintiff had no further limitations. AR 212-291. These findings were affirmed on October 9, 2002, by State Agency physician Durell Sharbaugh, M.D. AR 219.

On December 11, 2001, State Agency physician Evangeline Murillo, M.D., completed a Psychiatric Review Technique form and opined that Plaintiff was mildly restricted in activities of daily living and had mild difficulties in maintaining social functioning. AR 204. She opined that he was capable of simple, repetitive tasks. AR 206. This was affirmed by Dr. Sharbaugh on October 9, 2002. AR 194.

Also on December 11, 2001, Dr. Murillo completed a Mental Residual Functional Capacity Assessment form. She opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. AR 207. He was capable of performing simple, routine tasks on a sustained basis, relating to peers, supervisors and the public, adapting to a work-like setting and routine changes in the work place, and maintaining attention, concentration, persistence and pace to complete an eight hour workday and 40 hour workweek. AR 209. This was affirmed by Dr. Sharbaugh on October 9, 2002. AR 209.

1    Plaintiff saw Dr. Urbina on December 17, 2001, and indicated that he was depressed and
2 was thinking about getting Interferon treatment. He reported that his SSI claim was denied and
3 explained that most of the time, he was in so much pain that he could not even think about
4 working. Dr. Urbina assessed Plaintiff as relatively stable, but noted that Plaintiff's compliance
5 was questionable and "some secondary gain involved in clinical picture." AR 157. Plaintiff
6 refused to have his medication increased because of side effects. AR 157.

7    On January 23, 2002, Plaintiff told Dr. Urbina that his medications were not working and
8 complained of low energy level. He stated that he saw no future and that he kept to himself most
9 of the time. He reported that he took his medication and denied side effects. Dr. Urbina assessed
10 poor improvement and noted "compliance is questionable." AR 156. He discontinued
11 Wellbutrin and started Celexa.

12    Plaintiff saw Dr. Urbina on February 19, 2002, and reported that his depression had
13 improved with medication. AR 155.

14    On February 20, 2002, Plaintiff complained of a lifetime history of bowel disorder and
15 depression. AR 126. Dr. Smith indicated that Plaintiff was "very focused on bowel habits" and
16 reported that he spent four hours a day on bowel care. AR 126.

17    On March 18, 2002, Plaintiff complained of a "down day" and indicated that his stomach
18 still bothered him. He denied side effects and Dr. Urbina assessed him as stable. AR 154.

19    In April 2002, Plaintiff returned for a follow up and indicated that an herbal remedy was
20 helping his chronic constipation. His depression was partially controlled with medication. Dr.
21 Chang diagnosed IBS and constipation. Plaintiff was not interested in treating his hepatitis C.
22 AR 123.

23    On April 17, 2002, Plaintiff saw Dr. Urbina and complained of IBS, but denied any side
24 effects from his medications. He was assessed as stable. AR 153.

25    On May 6, 2002, Plaintiff reported that he cracked rib while plumbing. He also reported
26 that Citrucel was not helping his constipation. AR 122.

1   On May 28, 2002, Plaintiff complained of abdominal pain, low back pain and rib cage
2   pain. He indicated that fiber, laxatives and diet changes were not helping. AR 121. The doctor
3   noted that his depression was not yet well controlled. AR 121.

4   Plaintiff saw Dr. Urbina on May 29, 2002, and complained of fatigue and hopelessness
5   but denied suicidal thoughts. Dr. Urbina assessed Plaintiff as depressed but controlled with
6   medications. AR 151.

7   On June 26, 2002, Plaintiff saw Dr. Urbina and complained that his "life evolved around
8   the toilet," referring to his IBS. This frustrated him and impacted his mental stability. Plaintiff
9   was assessed as stable. AR 150.

10  In July 2002, Plaintiff complained of a low energy level but reported no appetite or sleep
11  disturbances or medication side effects. Dr. Urbina assessed Plaintiff as stable. AR 149.

12  On August 12, 2002, Plaintiff reported that he had changed his diet and that his
13  constipation was improving, but that he still has cramps and stomach pain. R 242. He again
14  refused treatment for his hepatitis C. AR 242.

15  On August 26, 2002, Plaintiff saw Dr. Smith and indicated that his abdominal pain was
16  under fair control and that he was experimenting with different types of food. Despite this,
17  Plaintiff reported that pain and constipation were still overwhelming his life. AR 241.

18  On August 28, 2002, Plaintiff reported that he had no appetite or sleep disturbances and
19  that he took his medications as prescribed with no reported side effects. AR 148. Dr. Urbina
20  assessed Plaintiff as stable. AR 148.

21  On October 24, 2002, Plaintiff indicated that things were not going well because he was
22  arguing with his mother, with whom he lived, over getting a dog. Dr. Urbina assessed Plaintiff
23  as depressed and noted that family issues were a problem. AR 227.

24  On November 7, 2002, Plaintiff indicated that a gluten-free diet was helping his IBS. AR
25  240.

26  Plaintiff continued seeing Dr. Urbina monthly from November 2002 through April 2003,
27  and although Plaintiff often complained of stomach problems, he indicated that he was taking his
28

medication as prescribed and denied side effects. Dr. Urbina indicated that Plaintiff was stable throughout this treatment period. AR 221-226.

On December 4, 2002, Plaintiff indicated that Elavil was not helping his back and made him sick and sleepy. Vioxx and Neurotin were prescribed. AR 237.

On December 30, 2002, Plaintiff saw Dr. Smith and complained of low back pain. On examination, there were no symptoms or signs and Dr. Smith opined that these complaints may be part of multiple somatic complaint syndrome. He increased Plaintiff's medication. AR 234.

On February 23, 2003, Plaintiff's lab tests were normal and he indicated that he was not interested in treating his hepatitis C and did not want a liver biopsy. AR 231.

Plaintiff saw Dr. Smith on March 24, 2003. Dr. Smith indicated that Plaintiff was responding to Dicyclomine, but that he should decrease the dose until there are no side effects. AR 230. Plaintiff refused a referral to a urologist. AR 230.

On March 24, 2003, Dr. Smith completed a questionnaire and indicated that Plaintiff was limited to sedentary work. AR 220. Dr. Smith indicated that Plaintiff "spends about 4 hours a day doing bowel care" and that he has functional bowel disorder (IBS with the sensation of constipation). Dr. Smith opined that Plaintiff could sit for one hour at a time and was unrestricted in standing/walking. He could sit for a total of 6 hours and stand and/or walk for 6 hours in an eight hour period, but "with [about] 2 [hours] a day devoted to bowel care." He did not need to lie down or elevate his legs and had no physical limitations "except perhaps 50 pound lifting limit." AR 220.

Plaintiff began physical therapy for his low back pain on May 19, 2003. AR 243.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of hepatitis C, hepatitis B, a history of intravenous drug abuse, low back pain and IBS. AR 16. The ALJ further found Plaintiff's alleged degree of limitation was not supported by the medical record. AR 17. Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, and to perform simple tasks. AR 18. Based on this RFC,

the ALJ determined that Plaintiff could perform other work existing in significant numbers in the national economy and was therefore not disabled. AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (hepatitis C, hepatitis B, a history of intravenous drug abuse, low back pain and IBS) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of positions in the national economy. AR 22.

Plaintiff argues that the ALJ (1) did not properly consider or develop the mental health record; (2) failed to properly consider all material evidence in his RFC determination; (3) failed to properly review Dr. Smith's questionnaire; and (4) did not properly review Plaintiff's testimony.

## DISCUSSION

A.   Mental Health Record

Plaintiff argues that the ALJ failed to fully consider and develop the mental health record. He contends that the record shows a GAF score of 50 and frequent notations of depression, and that the ALJ should have therefore ordered a consultive examination.[4]

An ALJ has a duty to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

[4] Plaintiff states that he has obtained a consultive examination from Dr. Paranyo and has attached the report to his opening brief. However, the report is not attached to the brief submitted to the Court nor was it attached to the document served on Defendant. In any event, such a report would constitute new medical evidence that does not appear to be material. 42 U.S.C. § 405 (g).

Here, there is no indication that the record was either ambiguous or inadequate. In assessing Plaintiff's testimony, the ALJ noted that the treatment records show that Plaintiff's condition was stable on medications and that despite his testimony about suicidal ideations "about every day," he repeatedly denied suicidal/homicidal ideations to Dr. Urbina. AR 17. In accordance with the State Agency physicians, the ALJ found that Plaintiff could perform simple tasks. AR 18.

Indeed, Dr. Urbina's treatment notes indicate that, for the most part, Plaintiff's major depressive disorder was controlled with medication and that Plaintiff was generally stable. AR 148-151, 153-155, 157-158, 160-162, 221-226. Although Plaintiff was assessed with a GAF score of 50 in July 2001, it does not change the overall adequacy of the record before the ALJ. AR 180. Dr. Murillo, in determining that Plaintiff could perform simple, repetitive tasks, reviewed his GAF score and other treatment notes. AR 211. She concluded, "mentally he does have some depression and is on treatment. It appears that it is controlled by meds, and [he] should be limited to SRT." AR 211. Dr. Murillo's opinion, upon which the ALJ relied, constitutes substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

B.   RFC Determination

Plaintiff next argues that the ALJ failed to properly consider all material evidence before arriving at his RFC finding. Plaintiff alleges that the ALJ found Plaintiff's IBS severe, but did not find any resulting limitations, ignored the fact that Interferon was required for his hepatitis and liver disease, and ignored Plaintiff's mild disc disease in the lumbar spine with chronic low back pain and scoliosis.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when

considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

Plaintiff points to Dr. Smith's notation that Plaintiff requires four hours per day of "bowel care." AR 220. This notation is based upon Plaintiff's report to Dr. Smith in February 2002 that he spent four hours a day on bowel care. AR 126. An ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).

In March 2003, Dr. Smith opined that Plaintiff could perform the physical requirements of medium work, but indicated that during an eight hour day, he would have to spend about two hours devoted to bowel care. AR 220. In his decision, the ALJ noted the inconsistencies in Dr. Smith's report and the lack of objective findings for the limitations. AR 17. As Plaintiff's counsel failed to submit evidence to clear up these issues, the ALJ gave little weight to Dr. Smith's opinion. AR 18. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Insofar as Plaintiff argues that the ALJ did not consider the fact that Interferon treatment was necessary, this argument is somewhat disingenuous. It is clear from the record that Plaintiff refused Interferon treatment. AR 119, 123, 134, 140, 231, 242. To the extent that Plaintiff argues that his condition was limiting because Interferon treatment was suggested, his argument fails. Even considering that Plaintiff's hepatitis C may cause fatigue, Dr. Damania opined that Plaintiff could lift 30 pounds frequently. AR 119.

Finally, contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's back impairment. The ALJ noted that the lumbar spine x-ray showed only mild L4-5 degenerative disc disease and right scoliosis. AR 16-17. Moreover, Dr. Damania examined Plaintiff's spine and found no abnormalities. AR 118. Even Dr. Smith indicated that Plaintiff had no physical limitations except for "perhaps" a 50 pound lifting limitation. AR 220.

C.   Dr. Smith's Questionnaire

Plaintiff contends that the ALJ wrongly rejected Dr. Smith's March 2003 questionnaire by unfairly applying *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Plaintiff attaches an order remanding for payment of benefits in another action, 1:04cv5791 TAG, and argues that the plaintiff in that action won benefits based partly on this issue.

The medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, as discussed above, the ALJ rejected Dr. Smith's questionnaire to the extent that it suggested the imposed limitations would prevent Plaintiff from working. AR 18. The ALJ explained that many of the comments on the form were illegible, the form lacked the bases for the conclusions, and the comments were inconsistent. AR 17. He further explained that he wanted clarification from Plaintiff's counsel as to the signer's specialty, the specific limitations, an onset date, and the bases for choosing that date. AR 18. He also requested information on how often Dr. Smith saw Plaintiff, the approximate dates of treatment, and whether Dr. Smith was part of a treatment team. AR 18.

Plaintiff's counsel did not provide this information, and the ALJ, citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), did not give the questionnaire much weight. AR 18. He also explained the evidence did not support the limitations imposed.

Plaintiff's argument, and her contention that the ALJ should have recontacted Dr. Smith, is again disingenuous since counsel did not provide the ALJ with the requested information.

Counsel should be wary of questioning the ALJ's rationale when she had an opportunity to correct the issues.

In any event, Plaintiff's argument is without merit. The ALJ properly rejected Dr. Smith's limitations and explained that his opinions were inconsistent and unsupported and that his treatment relationship with Plaintiff was not entirely clear. AR 17-18. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Although Plaintiff attaches a District Court case, the opinion is not binding precedent on this Court. Additionally, a review of the decision reveals that in that case, the overall medical evidence was more supportive of the rejected treating physician opinion than in the instant case.

D.   Plaintiff's Testimony

Finally, Plaintiff contends that the ALJ failed to address her credibility pursuant to SSR 96-7p.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

Second, Plaintiff contends that the ALJ failed to give adequate reasons for rejecting the credibility. This argument is without merit. The ALJ began his credibility analysis by recognizing that Plaintiff's impairments could reasonably be expected to produce some of the symptoms he alleges, but the degree of his limitations is not supported by the objective medical evidence. AR 17. He determined that Plaintiff's demeanor at the hearing was less than credible and explained that while Plaintiff testified that he is fully compliant with treatment, the medical records note numerous refusals of treatment. AR 17. Plaintiff submits that the ALJ "confused" current compliance with treatment with a history of refusal of treatment. However the events are characterized, the record demonstrates that Plaintiff refused Interferon treatment numerous times and once refused a referral to a urologist despite complaints of seeing blood in his underwear. AR 123, 134, 140, 231, 242, 230, 232-234. Plaintiff's treating psychiatrist also questioned whether Plaintiff was complaint with his medications on more than one occasion. AR 156-157. The ALJ is entitled to draw logical inferences from the medical record. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ further explained that Plaintiff's credibility was "quite poor in general," given Plaintiff's inconsistent reports of drug and alcohol cessation. AR 17. He testified at the hearing that he has had no alcohol since the 1980s and no illicit drugs in at least 8 years. AR 261. Yet, as the ALJ sets forth, Plaintiff reported (1) in November 2001, that he never drank alcohol and last used drugs eight years ago; (2) in July 2001, that he had been sober for four years; (3) in February 2001, that he used intravenous drugs in the 1970s; and (4) in July 2001, that he last used illicit drugs and/or alcohol 4-5 years ago. AR 17, 116, 142, 170, 186. Plaintiff also told Ms. Grainger, in July 2001, that he last used cocaine 10 years ago, crank three years ago and LSD

18 years ago. AR 177. He also told her that he smokes marijuana about three times a month, and last used a month ago. AR 177. The ALJ properly questioned Plaintiff's credibility based upon his inconsistent statements. *Thomas,* 278 F.3d at 958.

The ALJ next properly considered Plaintiff's extremely poor work history, i.e., only one year at the substantial gainful level since 1981, as detracting from Plaintiff's credibility. AR 17. *Id.* He also noted Dr. Urbina's indications that Plaintiff may have been seeking secondary gain. AR 17, 157, 160. *Id.* Plaintiff contends that the record does not establish that the signer of the report is a doctor, and that the ALJ should have recontacted the doctor for clarification. However, there is no indication that anyone other than Dr. Urbina signed the report and Plaintiff's attempts to create confusion is not well taken.

The ALJ next properly considered Plaintiff's daily activities. AR 17. He explained that Plaintiff does a wide range of activities of daily living, including tending to all his personal needs, doing yard work once a week, shopping every two weeks, driving a stick-shift pick-up truck, and doing laundry once a week. AR 17. *Id.*

Finally, the ALJ discussed the inconsistency between Plaintiff's testimony that he has had suicidal ideations "about every day" for the last four years and Plaintiff's repeated denials to treating sources of such feelings. AR 17. *Thomas,* 278 F.3d at 958. The ALJ noted that Plaintiff has consistently been described as stable when he takes his medications. AR 148-155, 222-226.

To the extent that Plaintiff argues that the ALJ failed to take the side effects of Plaintiff's medications into account, his argument fails. Plaintiff points to no limitations resulting from the alleged side effects and the record does not support any resulting limitations. Indeed, Plaintiff testified that he was not sure if his fatigue was caused by medications or by his "problems." AR 259. He also testified that he sleeps approximately 12 hours during a 24 hour period, but that this was not caused by the medications because he "slept a lot before" he started the medication. AR 264. Additionally, while the record indicates that Plaintiff complained of side effects on occasion, a majority of the record indicates that Plaintiff denied any side effects. *Id.*

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Gerald Kelley.

IT IS SO ORDERED.

Dated: **September 22, 2005**              **/s/ Dennis L. Beck**
3b142a                                             UNITED STATES MAGISTRATE JUDGE